# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

PRESTON JAKES,

          *Petitioner*,

vs.

DWIGHT NEVEN,

          *Respondent*.

Case No. 2:15-cv-00599-APG-GWF

**ORDER**

This habeas matter under 28 U.S.C. § 2254 comes before the Court for a decision on the merits as to the remaining claims.

## *Background*

Petitioner Preston Jakes challenges his 2013 Nevada state conviction, pursuant to a guilty plea, of attempt sexual assault. Jakes originally was charged with three counts of sexual assault with a minor under fourteen years of age, one count of attempt sexual assault with a minor under fourteen years of age, and three counts of lewdness with a child under the age of fourteen, all involving his daughter. He was sentenced to 96 to 240 months along with a special sentence of lifetime supervision and a sex offender registration requirement. He challenged his conviction on state post-conviction review.

## *Governing Law*

When the state courts have adjudicated a claim on the merits, the Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly deferential" standard for evaluating the state court ruling that is "difficult to meet" and "which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170 (2011). Under this deferential standard of review, a federal court may not grant relief merely because it might conclude that the decision was incorrect. 563 U.S. at 202. Instead, under 28 U.S.C. § 2254(d), the court may grant relief only if the state court decision: (1) was either contrary to or involved an unreasonable application of clearly established law as determined by the United States Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 563 U.S. at 181-88.

A state court decision is "contrary to" law clearly established by the Supreme Court only if it applies a rule that contradicts the governing law set forth in Supreme Court case law or if the decision confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result. *E.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003). A state court decision is not contrary to established federal law merely because it does not cite the Supreme Court's opinions. *Id.* Indeed, the Supreme Court has held that a state court need not even be aware of its precedents, so long as neither the reasoning nor the result of its decision contradicts them. *Id.* Moreover, "[a] federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." 540 U.S. at 16. For, at bottom, a decision that does not conflict with the reasoning or holdings of Supreme Court precedent is not contrary to clearly established federal law.

A state court decision constitutes an "unreasonable application" of clearly established federal law only if it is demonstrated that the state court's application of Supreme Court precedent to the facts of the case was not only incorrect but "objectively unreasonable." *E.g., Mitchell*, 540 U.S. at 18; *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The state court decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S.Ct. 1697, 1702 (2014)(internal quotation marks omitted).

When a state court's factual findings are challenged, the "unreasonable determination of fact" clause of Section 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id*. The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973.

Rather, AEDPA requires substantially more deference:

. . . . [I]n concluding that a state-court finding is unsupported by

> substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence.

In the claims remaining before the Court, petitioner presents claims of ineffective assistance of counsel.

The decisions in *Tollett v. Henderson*, 411 U.S. 258 (1973), and *Hill v. Lockhart*, 474 U.S. 52 (1985), sharply curtail the possible grounds available for challenging a conviction entered following a guilty plea. As the Supreme Court stated in *Henderson*:

> .... [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the [constitutional] standards [established for effective assistance of counsel.]

411 U.S. at 267. Accordingly, "while claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel, they are not themselves independent grounds for federal collateral relief." *Id.*

In *Hill*, the court held that the two-pronged test of *Strickland v. Washington*, 466 U.S. 668 (1984), applies to a challenge to a guilty pleas based on alleged ineffective assistance of counsel. 474 U.S. at 58. Accordingly, a petitioner seeking to set aside a guilty plea due to ineffective assistance of counsel must demonstrate that: (1) his counsel's performance fell below an objective standard of reasonableness; and (2) the defective performance resulted in actual prejudice. 474 U.S. at 58-59.

On the performance prong, the question is not what counsel might have done differently but rather is whether counsel's decisions were reasonable from counsel's perspective at the time. In this regard, the court starts from a strong presumption that counsel's conduct fell within the wide range of reasonable conduct. *E.g., Beardslee v. Woodford*, 327 F.3d 799, 807-08 (9th Cir. 2003).

On the prejudice prong, as a general matter under *Strickland*, the petitioner must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *E.g., Beardslee*, 327 F.3d at 807-08. Application of this general principle to the specific context of a guilty plea leads to the requirement that the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Under *Hill*, a challenge to the voluntariness of a guilty plea potentially may be based upon a claim of ineffective of assistance of counsel also in proceedings prior to the plea. As the Supreme Court observed:

> . . . . For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial. . . . . As we explained in *Strickland v. Washington, supra*, these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker." *Id.*, 466 U.S., at 695, 104 S.Ct., at 2068.

474 U.S. at 59-60. Thus, an attorney's unprofessional error in failing to develop a meritorious defense may serve as a basis for overturning a guilty plea and conviction if, viewed objectively, there is a reasonable probability that, but for the error, the petitioner would not have pled guilty and would have insisted on going to trial.

While surmounting *Strickland*'s high bar is "never an easy task," federal habeas review is "doubly deferential" in a case governed by the AEDPA. In such cases, the reviewing court must take a "highly deferential" look at counsel's performance through the also "highly deferential" lens of § 2254(d). *Pinholster,* 563 U.S. at 190 & 202.

The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Pinholster*, 563 U.S. at 569.

## *Discussion*

### *Ground 1(a) – Alleged Failure to Investigate*

In Ground 1(a), petitioner alleges that he was denied effective assistance of counsel in violation of, *inter alia*, the Sixth and Fourteenth Amendments because trial counsel failed to investigate any part of his daughter's "story." He asserts that he asked counsel for a copy of the medical exam report and found out that there was no such report and no DNA evidence linking him to an offense. Jakes alleges that he "told counsel that there was no physical evidence at all to back up a charge for sexual assault, and to have his case dismissed," but counsel did not do so. He alleges that if counsel had investigated the "false statements and charges," he would have determined "for sure that petitioner was innocent." (ECF No. 7, at 3.)

As noted previously, the criminal complaint charged Jakes with a total of seven counts. The charges spanned a four-year period from December 1, 2006, through December 31, 2010. Three sexual assault counts respectively alleged digital penetration, genital penetration, and cunnilingus. An attempt sexual assault count alleged that he pushed his daughter's head toward his penis and told her to lick it "like an ice cream." Three lewdness counts respectively alleged touching the child's genital area with his hand, doing so with his penis, and ejaculating on his daughter. (ECF No. 16-2; Exhibit 2.)

The affidavit attached with the criminal complaint that the victim first reported the sexual abuse on April 29, 2012, approximately sixteen months after the last offense charged in the complaint. (ECF No. 16-2, at 5-7; Exhibit 2.)

Petitioner expressly admitted the following facts at his April 24, 2013, plea colloquy:

> THE COURT: Sir, are you pleading guilty because in truth and in fact on or between December 1st, 2006, and December 31st, 2010, here in Clark County, Nevada, you willfully, unlawfully, feloniously attempted to sexually assault and subject [name omitted], a female person, to sexual penetration by inserting your fingers into her genital opening and/or by placing your penis into her genital opening, and/or placing your mouth and/or tongue on or in her genital opening, and/or by pushing the head – her head towards your penis and telling her to lick your penis like an ice cream; you did so against her will or under conditions in which you knew or you should have known she was mentally or physically incapable of resisting or understanding the nature of your conduct?
>
> THE DEFENDANT: I understand.

| | |
|---|---|
| 1 | THE COURT: Is that what you did? |
| 2 | THE DEFENDANT: Yes. |

(ECF No. 16-11, at 6-7; Exhibit 11, at 5-6.)[1]

The state appellate courts rejected the claim presented on the post-conviction appeal on the following grounds:

> First, appellant claimed that trial counsel was ineffective for failing to research, investigate, or prepare for trial. Appellant claimed that counsel failed to acquire medical documentation of the sexual assault and did not investigate his "story." Appellant failed to support this claim with specific facts that, if true, would entitle him to relief. *Hargrove v. State*, 100 Nev. 498, 502–03, 636 P.2d 222, 225 (1984). Therefore, the district court did not err in denying this claim.

(ECF No. 17-20, at 3; Exhibit 46, at 2.)

The state appellate courts' rejection of this claim was neither contrary to nor an objectively unreasonable application of clearly established federal law.

In *Blackledge v. Allison*, 431 U.S. 63 (1977), the Supreme Court stated:

> [T]he representations of the defendant, his lawyer, and the prosecutor at . . . a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

431 U.S. at 73-74. Under *Blackledge*, a collateral attack that directly contradicts the responses at the plea proceedings "will entitle a petitioner to an evidentiary hearing only in the most extraordinary circumstances." *Id.*, at 80. "[A] valid guilty plea relinquishes any claim that would contradict the 'admissions necessarily made upon entry of a voluntary guilty plea.'" *Class v. United States*, 138 S.Ct. 798, 805 (2018)(quoting *United States v. Broce*, 488 U.S. 563, 573-74 (1989)).

Here, Jakes' bare claim that defense counsel failed to investigate alleged exculpatory evidence that would have establish his innocence directly contradicts his express admission of guilt during, *inter*

---

[1] Petitioner additionally acknowledged his guilt at sentencing and in connection with the associated psycho-sexual examination. (See ECF No. 16-12, at 4-5 & 7-10; Exhibit 12, at 3-4 & 6-9.)

*alia*, his plea colloquy. Jakes admitted committing or attempting to commit numerous specific sexual acts with his minor daughter. Under *Blackledge*, he cannot now contradict this specific admission of factual guilt by presenting an ineffective-assistance claim premised upon conclusory allegations that his daughter's report of his sexual abuse was false.

Moreover, the absence of a medical sexual assault examination report and/or DNA evidence tying Jakes to the offenses would not, in and of itself, establish his innocence of the incidents which he admitted during his plea. The incidents in question occurred at least sixteen months, and in some instances, years prior to the victim's first report that led to a police investigation. Petitioner presented no competent evidence that in any way would establish that a sexual assault examination would have led to significant findings at that point and/or that DNA evidence still could be recovered at that time – if DNA evidence even would have been available in the first instance given the nature of some of the offenses. This case did not involve a report of a sexual assault that had occurred shortly prior to the victim's report. Even in such cases, the absence of significant findings in a timely sexual assault examination and/or the absence of DNA evidence are not conclusive as to innocence or guilt, especially with regard to charges involving digital penetration or cunnilingus. The victim's testimony can be sufficient to establish guilt even without corroborating clinical findings. Thus, regardless of what Jakes allegedly requested his counsel to do, his counsel could not simply have the case dismissed because there was no medical examination report or DNA evidence. Jakes could have been convicted based solely on his daughter's testimony. Jakes' claim thus at bottom is based upon erroneous assumptions that he could not be convicted without a medical exam report and DNA evidence and further that a dismissal was available simply by the asking without such evidence.

The state appellate courts' rejection of the bare claim presented to the state courts thus was not an objectively unreasonable application of clearly established federal law.

Ground 1(a) therefore does not provide a basis for federal habeas relief.

***Ground 2(a) – Alleged Conflict from Prior Experience as a Prosecutor***

In Ground 2(a), petitioner alleges that he was denied effective assistance of counsel because trial counsel allegedly previously was a prosecutor who prosecuted sex offenders. Petitioner maintains that defense counsel thus had no interest in helping him, coerced him by telling him that he would get 35

years to life if he went to trial, and negotiated the "worst possible deal because he's used to putting alleged sex offenders behind bars." (ECF No. 7, at 6.)

The state appellate courts rejected the claim on the following grounds:

> Second, appellant claimed that trial counsel was ineffective because counsel had a conflict of interest. Specifically, appellant claimed that trial counsel had previously prosecuted sexual offenders, and therefore, was not looking out for his best interests. Appellant failed to demonstrate that there was an actual conflict of interest. *See Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). Appellant failed to demonstrate his counsel was placed in a situation conducive to divided loyalties, *Clark v. State*, 108 Nev. 324, 326, 831 P.2d 1374, 1376 (1992), or that his counsel actively represented conflicting interests, *Burger v. Kemp*, 483 U.S. 776, 783 (1987). Therefore, the district court did not err in denying this claim.

(ECF No. 17-20, at 3; Exhibit 46, at 2.)

The state court's rejection of this frivolous claim was neither contrary to nor an unreasonable application of clearly established federal law. As the state appellate court noted, petitioner must demonstrate an actual conflict of interest where petitioner raised no objection based upon conflict of interest prior to his plea. *See, e.g., Cuyler*, 446 U.S. at 348 (in context of multiple representation). Petitioner's bare allegation that his counsel failed to vigorously pursue his interests because he formerly was a prosecutor establishes no such actual conflict of interest. Indeed, it generally is regarded as an advantage to have a defense lawyer who had prior experience also as a prosecutor, even better yet if he had experience prosecuting cases involving the same type of crime. Moreover, petitioner did in fact face serious potential sentencing exposure if he went to trial and lost on one or more of the seven serious charges pending against him.[2] Stating that fundamental reality of his situation did not constitute improper coercion. Jakes' plea deal (discussed further *infra*) hardly was the "worst possible deal" in the situation and instead was a very favorable deal for the defense in that situation.

Ground 2(a) very clearly does not provide a basis for federal habeas relief.

---

[2] For any sexual assault with a minor under 14 committed after June 14, 2007, the sentence would be 35 years to life. See N.R.S. 200.366(3)(c), as amended by 2007 Laws, ch. 528, § 7. Jakes faced three sexual assault counts. For any attempt sexual assault with a minor under 14, the sentence would be a minimum term of not less than 2 years and a maximum term of not more than 20 years. N.R.S. 193.330(1)(a)(1), as amended through 1997 Laws, ch. 314, § 2. Jakes faced one such charge. For any conviction for lewdness with a child under 14, the sentence would be 10 to life. N.R.S. 201.230(2), as amended through 2005 Laws, ch. 507, § 33. Jakes faced three such counts. Consecutive sentencing also remained a possibility following a conviction on multiple counts.

***Ground 2(b) – Failure to Seek Recusal of Sentencing Judge***

In Ground 2(b), petitioner alleges that he was denied effective assistance of counsel because trial counsel "did not try to get a new sentencing judge, knowing Judge Douglas W. Herndon used to prosecute sex offenders also." (ECF No. 7, at 6.)

The state appellate courts did not expressly address this claim separate and apart from the discussion of the other claims. There is a strong presumption that a state court adjudicated a claim on the merits in an order where it expressly addressed some but not all of the petitioner's claims, and that presumption may be overcome only in unusual circumstances. *See Johnson v. Williams*, 568 U.S. 289, 298-302 (2013). Jakes, who did not file a reply, has not sought to rebut this presumption in this case.

The deferential standard of review under AEDPA remains applicable where the last reasoned state court decision rejects a claim on the merits without further discussion:

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). . . . .
>
> . . . . Under § 2254(d), a habeas court must determine what arguments or theories supported *or, as here, could have supported*, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court. . . . .
>
> . . . . .
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified *res judicata* rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)(Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Richter*, 562 U.S. at 101-03 (emphasis added).

The state courts' implicit rejection of the claim in Ground 2(b) was neither contrary to nor an objectively unreasonable application of clearly established federal law. Ground 2(b) is frivolous. There is no viable basis for obtaining the recusal of a sentencing judge merely because he allegedly previously had been a prosecutor who prosecuted the same type of case. The state courts' implicit determination that Jakes could not demonstrate either deficient performance or resulting prejudice was not an objectively unreasonable application of *Strickland*. Jakes clearly cannot show that the state courts' rejection of this frivolous claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."

Ground 2(b) does not provide a basis for federal habeas relief.

***Ground 3 – Advice as to Sentence Exposure Following the Plea***

In Ground 3, petitioner alleges that he was denied effective assistance of counsel because trial counsel allegedly "assured him that 'lifetime' supervision would not be part of his sentence, but rather a 2-5 year sentence or even probation was possible." He additionally alleges, somewhat inconsistently, that counsel "never mentioned the possibility [of lifetime supervision] at all." Petitioner additionally alleges that "petitioner believed he was signing for a 24 - 240 month sentence, not the extream [sic] upper end of 96 - 240 months," without alleging how he came to hold that belief. (ECF No. 7, at 10.)

Jakes expressly acknowledged, *inter alia*, the following in his written plea agreement:

> I understand that as a consequence of my plea of guilty the Court must sentence me to imprisonment in the Nevada Department of Corrections for a minimum term of not less than TWO (2) years and a maximum term of not more than TWENTY (20) years. The minimum term of imprisonment may not exceed forty percent (40%) of the maximum term of imprisonment. . . . .
>
> . . . . .
>
> I also understand that pursuant to NRS 176.139 and my plea of guilty to a sexual offense for which the suspension of sentence or the granting of probation is permitted, the Division of Parole and Probation shall arrange for a psychosexual evaluation as part of the division's presentence investigative report to the Court.
>
> I understand that I am not eligible for probation unless that psychosexual evaluation certifies that I do not represent a high risk to reoffend. I understand that, except as otherwise provided by statute, the question of whether I receive probation is in the discretion of the sentencing judge.

. . . . .

>I further understand that the Court will include as part of my sentence, in addition to any other penalties provided by law, lifetime supervision commencing after any period of probation or any term of imprisonment and period of release upon parole; said special sentence of lifetime supervision must begin upon release from incarceration.

. . . . .

>I have not been promised or guaranteed any particular sentence by anyone. I know that my sentence is to be determined by the Court within the limits prescribed by statute.

>I understand that if my attorney or the State of Nevada or both recommend any specific punishment to the Court, the Court is not obligated to accept the recommendation.

(ECF No. 16-10, at 3-5; Exhibit 10, at 2-4.)

During the plea colloquy, Jakes further expressly acknowledged, *inter alia*, the following:

>THE COURT: Do you understand as a consequence of your plea the Court must sentence you to the Nevada Department of Corrections for a term of not less than two years, not more than twenty years, and you will be required to pay an administrative assessment fee?
>
>THE DEFENDANT: I understand.
>
>THE COURT: Do you understand the Division of Parole and Probation will arrange for a psychosexual evaluation as part of your presentence investigative report to the Court?
>
>THE DEFENDANT: Yes.
>
>THE COURT: Do you understand that you are not eligible for probation unless that evaluation certifies that you do not represent a high risk to re-offend?
>
>THE DEFENDANT: Yes, I understand.
>
>. . . . .
>
>THE COURT: Do you understand you will be subject to lifetime supervision?
>
>THE DEFENDANT: Yes.
>
>. . . . .
>
>THE COURT: Do you understand that sentencing is strictly up to the Court so nobody can promise you probation, leniency, or special treatment?
>
>THE DEFENDANT: I understand.

| | |
|---|---|
| 1 | THE COURT: I have the original of your guilty plea agreement. Did you read through it? |
| 2 | |
| 3 | THE DEFENDANT: Yes. |
| 4 | THE COURT: Did you understand it? |
| 5 | THE DEFENDANT: Yes. |
| 6 | THE COURT: Was your attorney there to answer any questions you had regarding this agreement? |
| 7 | THE DEFENDANT: Yes, he was. |
| 8 | THE COURT: And then you signed it? |
| 9 | THE DEFENDANT: Yes, ma'am. |
| 10 | THE COURT: Showing you page six, is this your signature? |
| 11 | THE DEFENDANT: Yes, it is. |
| 12 | THE COURT: Did you sign it freely and voluntarily? |
| 13 | THE DEFENDANT: Yes, ma'am. |

(ECF No. 16-11, at 4-7; Exhibit 11, at 3-6.)

The state appellate courts rejected the claim on the following grounds:

> Third, appellant claimed that trial counsel was ineffective for failing to show the entire plea agreement to appellant before he pleaded guilty. He claimed that counsel did not inform him that he was subject to lifetime supervision and that counsel told him he would receive a sentence of 2 to 5 years. Appellant failed to demonstrate that counsel was deficient or that he was prejudiced because this claim lacks merit. At the plea canvass, the district court specifically asked appellant if he understood that he was subject to lifetime supervision. Similarly, he was informed by the district court that the minimum he could receive was 2 years and the maximum he could receive was 20 years.[FN2] He also indicated that he had not received any promises regarding his sentence. Therefore, the district court did not err in denying this claim.
>
> [FN2] To the extent that appellant claimed that his plea was invalid because he thought the deal was for 2 to 20 years; this claim is also without merit. *See Bryant v. State*, 102 Nev. 268, 272, 721 P.2d 364, 368 (1986); *see also Hubbard v. State*, 110 Nev. 671, 675, 877 P.2d 519, 521 (1994). He was informed of the minimum and maximum sentences and that the district court had the discretion to sentence him within that range.

(ECF No. 17-20, at 3-4; Exhibit 46, at 2-3.)

////

The state courts' rejection of this claim was neither contrary to nor an objectively unreasonable application of clearly established federal law. As discussed previously, a valid guilty plea relinquishes any claim that would contradict the admissions made in entering the plea; and a collateral attack that directly contradicts the acknowledgments made in connection with the plea will entitle a petitioner to relief in only the most extraordinary circumstances. *Class*, 138 S.Ct. at 805; *Blackledge*, 431 U.S. at 73-74 & 80. Here, Jakes' assertions that he believed that he would receive only a 24 to 240 month sentence without lifetime supervision are directly contradicted by his acknowledgments in connection with his plea that sentencing remained within the discretion of the judge and that he would be subject to lifetime supervision. Moreover, any representation by counsel that a "2-5 year sentence or even probation was possible" was not incorrect. Such a sentence indeed was possible, and it was sought by counsel at sentencing. (ECF No. 16-12, at 10-11; Exhibit 12, at 9-10.) The fact that the judge instead imposed a greater sentence does not establish ineffective assistance or a basis for overturning the plea. Jakes specifically acknowledged in both the plea agreement and colloquy that sentencing remained in the discretion of the judge without regard to any recommendation by counsel.

Ground 3 therefore does not provide a basis for federal habeas relief.

**IT THEREFORE IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** on the merits and that this matter shall be **DISMISSED** with prejudice.[3]

**IT FURTHER IS ORDERED** that a certificate of appealability is **DENIED**, as jurists of reason would not find either the Court's prior exhaustion holdings or the dismissal of the remaining claims on the merits to be debatable or incorrect.

The Clerk of Court shall enter final judgment accordingly, in favor of respondents and against petitioner, dismissing this action with prejudice.

Dated: April 5, 2018.

_____
ANDREW P. GORDON
United States District Judge

---

[3] Counsel in future shall comply with Local Rule IC 6-1(a)(2) in exhibits, even where the child since may have become an adult. The risk of harm from disclosure does not cease when the sexually abused child becomes an adult.